# Sarah A. Speer *v.* Rosanna V. Burns et al., Appellants.

*Equity—Trust and trustees—Evidence—Tenants in common.*

On a bill in equity by a sister against the heirs at law of her deceased sister to compel a conveyance of one half interest in real estate which stood in the name of the deceased sister, a decree will be entered in favor of the plaintiff where the evidence shows that both sisters were jointly interested in a store from the proceeds of which the property in question was mainly paid for ; that plaintiff contributed money to start the store, and also contributed towards the first payment on the land ; that the deceased sister was business manager, making all purchases for the store, and paying all bills ; that plaintiff assisted in the store but had charge more particularly of household affairs ; that the two sisters were never married, but lived together and appeared to have all things in common.

Argued Nov. 1, 1895. Appeal, No. 197, Oct. T., 1895, by defendants, from decree of C. P. Allegheny Co., Oct. T., 1895, No. 61, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel a conveyance of the one-half interest in real estate.

The case was referred to R. S. Sill, Esq., as master, from whose report it appeared that Sarah A. Speer and Margaret A. Speer were sisters, and that the defendants were heirs at law of Margaret A. Speer. Plaintiff claimed that she was the owner of one half interest in the real estate in controversy, which stood in her sister Margaret's name.

The master recommended a decree in favor of the plaintiff.

Exceptions to the master's report were overruled by the court, WHITE, J., filing the following opinion by which the facts appear:

Although some of the findings and reasons of the master

may not be correct, the evidence sustains his conclusion that the plaintiff is entitled to a decree for the undivided half interest in the property in dispute.

There is abundance of evidence that both sisters were jointly interested in the grocery store, from the proceeds of which the property was mainly paid for. There is also evidence that Sarah contributed money to start the grocery store (at first only a small candy store) and she contributed to make the first payment on the lot. Margaret was the business manager, made all the purchases for the store and paid all bills. Sarah assisted in the store, but had charge more particularly of household affairs. The two sisters were never married, but lived together, and appeared to have all things in common.

The agreement for the purchase of the house and lot from Mr. Mellon, 16th of November, 1876, was in the name of Margaret alone. The consideration was $2,050, to be paid in monthly installments. It was not fully paid until 13th of May, 1889, when a deed was executed by Mellon, in the name of Margaret alone. Margaret died 2d of April, 1891.

About the time of the purchase Sarah lived in the country, and had a horse and some other stock. These were sold and she moved to the city and lived with Margaret until her death. According to the testimony of Mrs. Isabella Miller, the witness had a consultation about the purchase. Sarah at first was not in favor of it for fear they might not be able to make the payments, but yielded when Margaret suggested that the rents would pay the interest, and once in awhile they could make payments.

If the property was purchased jointly, or even if by Margaret alone, and paid for jointly, the statute against frauds and perjuries has no application to the case, nor has the act of 22d of April, 1856. Although the article of agreement for the purchase was on the 16th November, 1876, yet the purchase money was not fully paid, or the deed executed, until 13th May, 1889, less than five years before this bill was filed.

The evidence to sustain the plaintiff's claim and justify a decree must be clear, explicit and entirely satisfactory.

The evidence as to payments and how the property was held, is mainly the admissions and declarations of Margaret. These extended over several years and down to a short time before

her death. These were competent evidence, and of the most satisfactory character, if clear, explicit and unequivocal. There is no evidence of Sarah paying any of the purchase money to Mellon. But if Margaret admitted she did, or that her money went into the purchase, that is sufficient.

Let us then look into the testimony on this point. A brief statement of it will be sufficient.

Kate Neff testified: " Mrs. Margaret Speer told me that her and her sister Sarah worked together and paid for the property, that the property they lived in belonged to her and her sister, and no one else had anything to do with it."

Mrs. Emma Walker testified: That in a conversation with Margaret, two weeks before her death, when urging her to make a will, Margaret said, " What's the use, the property belongs to Sarah and myself jointly, we both earned it." Margaret also explained how they made the first payment—by the sale of a horse and cow of Sarah's. Margaret further told her that she and Sarah both made the first payment, and after the business paid, (the grocery store) they took the money out of it and paid Mellon. Margaret told me that the money derived from the sale of live stock by Sarah went into the grocery business.

Mrs. Susan Milliken testified: Margaret said that she and her sister Sarah had sold and bought this property and if anything happened her before Sarah, it all went to her.

Dr. T. P. Simpson testified: That he was their family physician, that in a conversation with Margaret in March, 1890, she spoke of the store and property (the house and lot) and said they had it in common, and whichever should die first, the other one should have that property. Margaret spoke of Sarah as being a cripple and in delicate health, and said that she would never want for anything from the fact that they held this property as I have stated before, (that is, in common.) She did not say anything about the deed, but that they held the property in common.

Katharina Neidengard testified: I know where my aunts got the money to start this store. They got it by borrowing $200 from my father, then selling aunt Sarah's live stock they returned the money. At first they had a little candy store, before Sarah came from the country, then changed to a grocery

store. Speaking of the property Margaret said "that they, (she and Sarah), were equal owners in the property."

Isabella Miller testified: Margaret said Sarah and her had started together. Sarah had a little money that she had saved when she was in the country, and Sarah had made some money by sewing for tailors, and Sarah had given to her the money she had saved to start in business with her. She said that Sarah and herself had accumulated what they owned themselves.

Mrs. E. J. Helsing testified: Margaret told me that her and Sarah had taken what money they had when they had bought the property to make the first payment on it.

The testimony on the part of the defendants is mainly in reference to Margaret managing and conducting the store. It does not directly contradict the testimony of the witnesses above quoted, or impeach their credibility.

The testimony of T. H. B. Patterson is in reference to conversations with the plaintiff, when she was making claims against the estate of Margaret. He was attorney for the estate. When he learned she was setting up claims against the estate which might be contested, he should have advised her to consult another attorney. To encourage her to state her case, and then appear as a witness against her to detail her statements, was, to say the least, imprudent, if not a breach of professional confidence. But his testimony in no way contradicts or impeaches the testimony of the witnesses to the declarations of Margaret. There is no evidence that Sarah, during the life of Margaret, knew that the deed was in her name alone. At the time of the conversations with Mr. Patterson she may not have known that she had any right to claim a share in the property. We have not her testimony in the case, because of her feeble condition as explained by her counsel. The case, therefore, does not rest, in whole or in part, on her testimony. It is entirely on the testimony of disinterested witnesses.

From the whole evidence, as thus briefly summarized, we are satisfied that the property in dispute was paid for by the joint labor and money of the two sisters, and that the deed, although in the name of Margaret alone, was for the two, and that Sarah is entitled to a decree for the undivided one half interest in it.

This view of the case renders it unnecessary to refer in detail to the numerous exceptions to the master's report. Wherein the report is in harmony with this opinion the exceptions are overruled, and wherein in conflict with this opinion they are sustained.

As the defendants seem to have acted in good faith in contesting the plaintiff's claim and standing upon the deed to Margaret, it would be unfair to impose all the costs upon them. The plaintiff should pay one half and the defendants one half.

Let decree be drawn in accordance with this opinion.

*Error assigned* was decree in favor of plaintiff.

*George N. Chalfant, T. H. Baird Patterson* with him, for appellants.—To establish a resulting trust by parol, the evidence must be full, clear, satisfactory and indubitable: Baer's App., 127 Pa. 360; Capehart v. Capehart, 2 Phila. 134; Hoover v. Hoover, 129 Pa. 201; Ferguson v. Rafferty, 128 Pa. 337; Walter's App., 8 Atl. 406; Jackson's App., 8 Atl. 870.

The chancellor must be satisfied that the evidence is relevant and sufficient and indubitable: Farrell v. Lloyd, 69 Pa. 239; Harrold v. Lane, 53 Pa. 268; Hays v. Quay, 68 Pa. 263; Miller v. Blose, 30 Gratt. Va. 744; Kane v. O'Conners, 78 Va. 76; Reynolds v. Caldwell, 80 Ala. 222; Dudley v. Bachelder, 53 Me. 403; Lee v. Browder, 51 Ala. 288; Hyden v. Hyden, 6 Baxt. (Tenn.) 406; Edwards v. Edwards, 39 Pa. 369; Warren v. Steer, 112 Pa. 634; Wylie v. Mansley, 129 Pa. 65; Moyer's App., 12 Cent. 519; Morrell v. Riddle, 82 Mo. 31; 1 Perry on Trusts, p. 163; Nixon's App., 63 Pa. 279; Williard v. Williard, 56 Pa. 119; 1 Perry on Trusts, p. 166.

*R. S. Martin, H. McDowell* and *W. A. Hudson,* of *Hudson & McCue,* for appellee.—The acknowledgment of the fact of a trust, at any time, amounts to a confession, and may be given in evidence: Williard v. Williard, 56 Pa. 119; Gregory's Lessee v. Salter, 1 Dallas, 193.

PER CURIAM, January 6, 1896:

A careful consideration of the record in this case, with special reference to the assignments of error, has led us to the con

clusion that the findings of fact of which the decree is predicated are substantially correct, and that the decree itself is sufficient in both form and substance. There is nothing in any of the specifications of error that requires discussion. Neither of them is sustained.

Decree affirmed and appeal dismissed with costs to be paid by the appellants.